# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Kathy Harris<br><br>    Plaintiff, individually and on behalf of others similarly situated,<br><br>v.<br><br>Diversified Consultants Inc. and LiveVox Inc.<br><br>    Defendants. | 14-576-MJR-DGW<br><br>**CLASS ACTION COMPLAINT UNDER THE TELEPHONE CONSUMER PROTECTION ACT AND THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE PRACTICES ACT** |

## PARTIES

1. Plaintiff, Kathy Harris, ("Kathy"), is a citizen of Illinois who seeks judgment against Defendants on behalf of herself and others similarly situated to redress Defendants' pattern and practice of conduct violating federal and state consumer protection law when making "wrong party" calls to consumers' cellular phones.

2. Defendant, Diversified Consultants, Inc. ("DCI"), is a Florida Corporation, registered in Illinois as a foreign business corporation authorized to conduct business in Illinois, with a principal place of business at 10550 Deerwood Park Blvd., Jacksonville, FL.

3. Defendant LiveVox Inc. ("LiveVox") is a Delaware corporation, registered in Illinois as a foreign business corporation authorized to conduct business in Illinois, with its principal place of business at 450 Sansome St. 9th Fl., San Francisco, CA.

## JURISDICTION AND VENUE

4. Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as the claims arise under the Telephone Consumer Protection Act, ("TCPA"), 47 U.S.C. §227.

The Court has supplemental jurisdiction over the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) state law claim.

5. Pursuant to 28 U.S.C. §1391, venue is proper because a substantial part of the events giving rise to this claim occurred in this judicial district because Defendants regularly directed calls to Kathy in this District.

## GENERAL STATEMENT OF FACTS

6. DCI does business with LiveVox.

7. DCI uses the LiveVox and their cloud-based dialer system to make collection calls.

8. Each morning, a DCI employee loads into the LiveVox system approximately three to three-and-one-half million phone numbers.

9. Using the LiveVox system, DCI calls upwards of ninety percent of those phone numbers on a daily basis.

10. The LiveVox system selects the numbers to be called according to a protocol or strategy entered by DCI.

11. When a call is answered, the LiveVox dialing system connects the called party with a live DCI representative.

12. The process works as follows: when a DCI representative is ready to begin communicating with debtors, the representative logs into the LiveVox system and toggles a button within the application indicating that the representative is ready to receive live callers.

13. Using a pre-programmed algorithm designed to limit the amount of time between calls, LiveVox begins to simultaneously call multiple debtors.

14. The DCI representative receives an audible "beep" in their headset once the LiveVox system connects with a person and transfers the call.

15. In this manner, the LiveVox dialing system "operates exactly as a predictive dialer would." See *Echevvaria v. Diversified Consultants, Inc.,* 2014 U.S. Dist. LEXIS 32136, *5-6 (S.D. N.Y. 2014).  See also Docket, 1:13cv4980 (S.D. N.Y.), Document 19-5 - Deposition of Jamie Sullivan, p. 33 l. 5.

16. "A predictive dialer is an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that "predicts" the time when a consumer will answer the phone and a telemarketer will be available to take the call. Such software programs are set up in order to minimize the amount of downtime for a telemarketer. In some instances, a consumer answers the phone only to hear "dead air" because no telemarketer is free to take the call." See Telemarketing Sales Rule, Notice of Proposed Rulemaking, Federal Trade Commission, 67 Fed. Reg. 4492 at 4522 (January 30, 2002) (FTC Notice).

17. A predictive dialer is considered an ATDS under the TCPA. *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1129 (W.D. Wash. 2012).

18. The LiveVox phone system is an ATDS.

19. LiveVox recognizes that its phone system has been ruled to be an ATDS by a Court.

20. In a document created by LiveVox, it states that in, "one court ruling that LiveVox's Application Services is indeed an ATDS subject to the TCPA."

21. The LiveVox system also uses Interactive Voice or IVR which is a type of recorded or artificial voice.

22. The IVR makes a request to speak to a caller when the phone is answered.

23. DCI uses LiveVox to make phone calls thus all phone calls made by and for DCI are made using the LiveVox ATDS.

24. The DCI LiveVox telephone system has the capacity to be an ATDS. Both auto-dialed "campaign calls", preview-mode calls and any so-called "manual" dialed calls made by the DCI LiveVox telephone system use an ATDS in order to call numbers assigned to cellular telephone services.

25. Other consumers have complained in lawsuits about unwanted robo-calls from DCI using its LiveVox ATDS. See *Fabio v. DCI*, 13-cv-524, (W.D. Wisc.); *Echevvaria V. Diversified Consultants, Inc.,* 1:13cv4980, (S.D. N.Y.); *Fail v. Diversified Consultants, Inc.,* 14-cv-525 (M.D. Fla.); *Daniels v. Diversified Consultants, Inc.* 14-cv-253 (M.D. Fla.); *Murray v. Diversified Consultants, LLC* 13-cv-3074 (M.D. Fla.); *Waite v. Diversified Consultants, LLC* 13-cv-491 (M.D. Fla.); *Gaza v. Diversified Consultants, LLC* 13-cv-1785 (M.D. Fla.); *Applegate v. Diversified Consultants, LLC* 13-cv-596 (M.D. Fla.) and *French v. Diversified Consultants, LLC* 13-cv-900 (N.D. Ill.).

26. Other consumers have complained on the Internet about receiving calls on their cell phones from DCI; http://800notes.com/Phone.aspx/1-314-338-3956; http://800notes.com/Phone.aspx/1-314-338-3974; http://www.whycall.me/314-338-3974.html.

27. Jamie Sullivan, a technology employee of DCI, disclosed in a deposition that calls to wrong numbers by LiveVox for DCI are a regular source of complaints.

28. Jamie Sullivan was asked and answered in a deposition;

Q. - What would be -- you said you had some complaints about Live Aux. (sic) What would be some typical normal complaints that you've had that you've had to call Robert about?

A. - Well, we do get -- we have our fair share of wrong numbers, just to the nature of the business, because almost all of our clients are cell phones. There's a lot of cell phones that

4

change and get ported out. So we have a lot of people that get cell phone numbers that no longer belong to them for whatever reason. So we get a lot of people that call in, and they say that they have a wrong number or we call them and they answer the phone, and they tell us they have a wrong number. That's the No. 1.

See *Echevvaria v. Diversified Consultants, Inc.,* 1:13cv4980 (S.D. N.Y. 2014). Document 19-5 - Deposition of Jamie Sullivan, pp. 26-27 ll. 20-6.

## FACTS PARTICULAR TO PLAINTIFF

29. On or around February 21, 2014, DCI started calling Plaintiff at 618-***-0267 looking for Akasha McGee. (number partially redacted)

30. Kathy informed DCI's agents that she was not Akasha McGee.

31. DCI was given knowledge that they were calling the wrong party and reaching a wrong number.

32. Nevertheless, DCI continued calling Kathy's number over 20 times between February 21, 2014 and April 1, 2014.

33. Kathy never provided consent to DCI to call her cellular phone number.

34. Defendants called Kathy in violation of the TCPA and ICFA.

## CLASS ALLEGATIONS

35. DCI and LiveVox have a pattern and practice of regularly calling phone numbers assigned to cellular service using both an artificial or prerecorded voice and an ATDS or "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers.

36. Numerous consumers have regularly complained about DCI phone calls made to their cellular phone numbers without their consent using the LiveVox ATDS.

37. Plaintiff seeks to represent two classes; (1) all consumers who were called by Defendants on their cellular phone numbers ("TCPA Class") and (2) Illinois consumers who were called by Defendants on their cellular phone numbers ("Illinois ICFA subclass").

38. The numerosity requirement is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Circumstantial evidence based upon Internet consumer complaints, lawsuits and ATDS call volume as testified to by DCI employee Jamie Sullivan prove that the class size exceeds 40 persons.

39. Commonality requires there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Specifically, class members' claims should "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Walmart Stores Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (U.S. 2011). This requirement is met here. All of the class members' claims hinge on the common factual and legal contention that Defendants made an illegal calls to cellular phone numbers in violation of the TCPA, 47 USCS § 227(b)(1)(A)(iii) See *Soppet v. Enhanced Recovery Co., LLC*, 679 F. 3d 637 (7th Cir. 2012)

40. Class members claims also relate to the common issue of whether Defendants willfully or negligently violated violated 47 U.S. Code § 227(b)(1)(A)(iii) and whether class members are entitled to statutory damages of $500 or $1500 per call.

41. Subclass members' claims relate to the common issue of whether Defendants violated 815 ILCS 505/2.

42. Plaintiff is typical for purposes of Rule 23(a)(3) because her claims arise from the same event or practice or course of conduct that gives rise to the claims of the class and subclass members and are based on the same legal theories.

43. Plaintiff asserts that both she and potential class members received phone calls from the DCI LiveVox ATDS. The claims of all class members, named plaintiff included, arise from the same practice and course of conduct, and thus the typicality requirement of Rule 23(a)(3) is satisfied.

44. Plaintiff is an adequate class representative. Her interests in recovering damages and injunctive relief are sufficiently aligned with the absentee class and subclass members and she has retained Counsel with both consumer litigation and class action experience.

45. A Class Action is the superior method of adjudication of a TCPA case. As one Court has noted, "If each proposed class member pressed his claim, a single class action would clearly be superior to thousands of individual actions. . . . If the proposed class members would otherwise abandon their claim [because, for instance, a $500 recovery is not sufficiently large to justify bringing suit, even in small claims court], then a class action is superior because it provides actual adjudication." *Sparkle Hill, Inc. v. Interstate Mat Corp.*, 2012 U.S. Dist. LEXIS 178793, *4 (D. Mass. 2012).

46. The precise Class and Subclass Definitions will be named in Plaintiff's final Class Certification Motion.

## COUNT ONE

**Violations of the Telephone Consumer Protection Act on Behalf of Class**

47. Plaintiff incorporates each of the preceding allegations as if specifically stated herein.

48. Defendant willingly and knowingly violated 47 U.S.C. § 227(b)(1)(A)(iii) on multiple and separate occasions by calling Plaintiff and other consumers at telephone numbers assigned to a cellular service for non-emergency purposes using an ATDS without prior express consent.

49. In the alternative, Defendant negligently violated 47 U.S.C. § 227(b)(1)(A)(iii) on multiple and separate occasions by calling Plaintiff and other consumers at telephone numbers assigned to a cellular service for non-emergency purposes using an ATDS without prior express consent.

## COUNT TWO

### Violations of the ICFA for Unfair Practices

50. Kathy incorporates each of the preceding allegations as if specifically stated herein.

51. Defendants engaged in an unfair practice that violated the ICFA and caused actual damages by engaging in the practice of making unwanted calls to Plaintiff and class members' cellular phones.

52. Illinois recognizes the Sperry test for unfairness. The Sperry factors ask whether the practice (1) offends public policy, (2) is immoral, unethical, oppressive, or unscrupulous, or (3) causes substantial injury to consumers. All three of the criteria in Sperry do not need to be satisfied to support a finding of unfairness. Instead, a practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all. See *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002).

53. Defendants' practice of calling a consumer like Kathy and subclass members on their cellular phones offends public policy as established by the common law of invasion of privacy and modern-day consumer telephone consumer protection law including the TCPA.

54. Defendants' regular practice of calling "wrong parties" violates public policy established in case law such as *Soppet v. Enhanced Recovery Co., LLC*, 679 F. 3d 637 (7th Cir. 2012).

55. Defendants' practice violates industry ethical guidelines.

56. For example, Defendants' practice fails to meet the ethical standards of the ACA International Code of Ethics and Code of Conduct that require, "In addition to any requirements imposed by law or regulation, in instances of alleged…. mistaken identity, conduct a reasonable investigation to determine…. the identity of the obligor on the account and the accuracy of the information in the possession of the Member."

57. Defendants have knowledge that calls to "wrong parties" is the Number One source of consumer complaints according to DCI employee Jamie Sullivan yet Defendants have failed to implement technology and practices to avoid making "wrong party" calls to cellular phones.

58. Defendants do not conduct a reasonable investigation to determine the identity of the true obligor on the account and the accuracy of the information in the possession of Defendants prior to making "wrong party" calls.

59. Defendants' practice is oppressive because Kathy and subclass members have no choice of whether Defendants continue to make calls to their cellular phones. See *Centerline Equip. Corp. v. Banner Pers. Serv.*, 545 F. Supp. 2d 768, 780 (N.D. Ill. 2008)(holding that receipt of a single unwanted fax was oppressive).

60. Defendants' calls cause substantial injury to consumers in the form economic and actual damages in the form of charges related to cellular service; software, application and call blocking costs; battery loss; invasion of privacy; aggravation and inconvenience.

61. The U.S. Congress when passing the TCPA recognized that nonconsensual robo-calls cause substantial injury to consumers.

62. Senator Hollins, a sponsor of the TCPA, made a statement of the Senate floor that, "Computerized calls are the scourge of modern civilization." See *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 752 (U.S. 2012).

63. Defendants' violation of 815 ILCS 505/2 proximately caused actual damages to Kathy and the members of the subclass when "wrong party" calls were made to their cell phones.

## JURY DEMAND

64. Plaintiff demands a jury.

## PRAYER FOR RELIEF

Plaintiff prays for the following relief:

    a. An Order certifying a nationwide TCPA injunctive relief class; certifying a TCPA statutory damages class; certifying an Illinois subclass; and certifying Plaintiff and her Counsel as Class Representative and Class Counsel.

    b. An Order enjoining Defendant on a nationwide basis from placing further calls to telephone numbers assigned to cellular telephone service using an ATDS without express written consent pursuant to 47 U.S.C. § 227(b)(3)(A).

    c. Judgment against Defendant and for Plaintiff and the TCPA damages class for statutory damages pursuant to 47 U.S.C. § 227(b)(3)(B) for each and every call Defendant made in violation of the TCPA.

    d. Judgment against Defendant for Plaintiff and the Illinois subclass for relief pursuant to 815 ILCS 505/10a and the costs of the action, together with a reasonable attorney's fee as determined by the court.

  e. For such other legal and/or equitable relief as the Court deems appropriate.


          RESPECTFULLY SUBMITTED,
          Hyslip & Taylor, LLC LPA


         By: /s/ Mark T. Lavery
           One of Plaintiff's Attorneys

Mark T. Lavery, Esq.
Hyslip & Taylor LLC LPA
917 W. 18th St., Suite 200
Chicago, IL  60608
312-380-6110
Mark@lifetimedebtsolutions.com